UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| IVAN COTTON,<br><br>                    Petitioner,<br>          v.<br><br>JOHN HENLEY,[1]<br><br>                    Respondent. | Case No. 3:23-cv-00570-MMD-CSD<br><br>ORDER |

I.    **SUMMARY**

Petitioner Ivan Cotton, a Nevada prisoner, has filed a First-Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. (ECF No. 23 ("First-Amended Petition").) Before the Court is Respondent's motion to dismiss the First-Amended Petition. (ECF No. 35 ("Motion").) Cotton opposed the Motion, and Respondent replied. (ECF Nos. 49, 55.) For the reasons discussed below, the Court grants the Motion in part.

II.    **BACKGROUND**

The Nevada Supreme Court detailed the facts presented at Cotton's trial as follows:

> The record shows that while sitting in the driver's seat of her car, the victim was shot six times in her right torso by a handgun registered to Cotton, which was in his possession earlier in the day. Cotton and the victim were romantically involved. Leading up to the murder, witnesses testified that the couple were quarreling and the relationship was ending. During a phone conversation, Cotton and the victim agreed to meet at a nearby park to discuss their relationship. Approximately two minutes later Cotton called 9-

---

[1]According to the state corrections department's inmate locator page, Cotton is incarcerated at Northern Nevada Correctional Center. John Henley is the current warden. Accordingly, at the end of this Order, the Court kindly requests the Clerk of Court substitute John Henley for Respondent Tim Garrett. *See* Fed. R. Civ. P. 25(d).

1-1 to report the victim had shot herself. When law enforcement arrived, no one else was present and Cotton told the officers to, "put me in cuffs" and "just take me to jail."

(ECF No. 38-7 at 4.)

A jury found Cotton guilty of first-degree murder with the use of a deadly weapon. (ECF No. 37-6.) Cotton was sentenced to life in prison without the possibility of parole. (*Id.*) His judgment of conviction was entered on October 23, 2018. (*Id.*) Cotton appealed, and the Nevada Supreme Court affirmed on February 5, 2020. (ECF No. 38-7.) Remittitur issued on March 2, 2020. (ECF No. 38-8.)

Cotton filed a state habeas petition on March 2, 2021. (ECF No. 38-11.) The state court denied the petition on January 13, 2022. (ECF No. 38-21.) Cotton appealed, and the Nevada Court of Appeals affirmed on December 22, 2022. (ECF No. 38-42.) Remittitur issued on January 17, 2023. (ECF No. 38-43.)

Cotton commenced this action on November 16, 2023. (ECF No. 1.) The Court appointed counsel for Cotton, and Cotton filed his counseled First-Amended Petition on April 14, 2025. (ECF Nos. 9, 23.) Cotton raises the following grounds in his First-Amended Petition:

1. There was insufficient evidence to support his murder conviction.
2. His sentence violates his right to be free from cruel and unusual punishment.
3. His trial counsel failed to seek adverse inferences from the omission of exculpatory testing.
4. His trial counsel improperly conceded that Cotton was guilty of second-degree murder without his consent.
5. His trial counsel failed to object when the trial court did not adhere to the sentencing stipulation.
6. His trial counsel (a) failed to present expert testimony to support his defense theory of a struggle or accidental shooting and (b) instead presented a false defense.
7. His trial counsel failed to present evidence that his PTSD and mental health issues affected his ability to form first-degree intent.

(ECF No. 23.)

///

///

2

Respondent argues that (1) Cotton's *pro se* Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2254 by a Person in State Custody ("Original Petition") and First-Amended Petition are both untimely, and (2) grounds 3, 6a, and 7 are unexhausted.[2]

**III.    LEGAL STANDARDS**

**A.    Timeliness**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") establishes a one-year period of limitations for state prisoners to file a federal habeas petition under 28 U.S.C. § 2254. The one-year limitation period begins to run from the latest of four possible triggering dates, with the most common being the date on which the petitioner's judgment of conviction became final by either the conclusion of direct appellate review or the expiration of the time for seeking such review. *See* 28 U.S.C. § 2244(d)(1)(A). For a Nevada prisoner pursuing a direct appeal, a conviction becomes final when the 90-day period for filing a petition for certiorari in the Supreme Court of the United States expires after a Nevada appellate court has entered judgment or the Supreme Court of Nevada has denied discretionary review. *See Harris v. Carter*, 515 F.3d 1051, 1053 & n. 1 (9th Cir. 2008); *Shannon v. Newland*, 410 F.3d 1083, 1086 (9th Cir. 2005); Sup. Ct. R. 13. The federal limitations period is tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). But no statutory tolling is allowed for the period between finality of a direct appeal and the filing of a petition for post-conviction relief in state court because no state court proceeding is pending during that time. *Nino v. Galaza*, 183 F.3d 1003, 1006-07 (9th Cir. 1999); *Rasberry v. Garcia*, 448 F.3d 1150, 1153 & n.1 (9th Cir. 2006).

_____

[2]Respondent also argues that grounds 5 and 6b are unexhausted; however, given that the Court finds these two grounds are untimely, it need not determine whether they are exhausted.

3

**B.     Exhaustion**

A state prisoner first must exhaust state court remedies on habeas claims before presenting those claims to the federal courts. *See* 28 U.S.C. § 2254(b)(1)(A). This exhaustion requirement ensures that the state courts have the first opportunity to address and correct alleged violations of federal constitutional guarantees. *See Coleman v. Thompson*, 501 U.S. 722, 730-31 (1991). "A petitioner has exhausted his federal claims when he has fully and fairly presented them to the state courts." *Woods v. Sinclair*, 764 F.3d 1109, 1129 (9th Cir. 2014) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999) ("Section 2254(c) requires only that state prisoners give state courts a fair opportunity to act on their claims.")). A petitioner must present the substance of his claim to the state courts, and the claim presented to the state courts must be the substantial equivalent of the claim presented to the federal court. *See Picard v. Connor*, 404 U.S. 270, 278 (1971). The state courts have been afforded a sufficient opportunity to hear an issue when the petitioner has presented the state court with the issue's factual and legal basis. *See Weaver v. Thompson*, 197 F.3d 359, 364 (9th Cir. 1999); *see also Scott v. Schriro*, 567 F.3d 573, 582-83 (9th Cir. 2009) ("Full and fair presentation additionally requires a petitioner to present the substance of his claim to the state courts, including a reference to a federal constitutional guarantee and a statement of facts that entitle the petitioner to relief."). A petitioner may reformulate his claims so long as the substance of his argument remains the same. *See Picard*, 404 U.S. at 277-78.

**IV.     DISCUSSION**

**A.     Timeliness**

Cotton's direct appellate review concluded on February 5, 2020, with the Nevada Supreme Court's affirmation of his judgment of conviction. As such, Cotton's conviction became final when the time expired for filing a petition for writ of certiorari with the United

4

States Supreme Court 150[3] days later on July 4, 2020. The federal statute of limitations began to run the following day: July 5, 2020. Cotton timely filed his state habeas petition on March 2, 2021, tolling the AEDPA clock. As a result, 240 days elapsed between the finality of the judgment and the filing of the state habeas petition. The remaining 125 days of the AEDPA limitations period were statutorily tolled during the pendency of all proceedings related to Cotton's state habeas petition. Tolling ended on January 17, 2023, when the remittitur issued. The AEDPA clock restarted the following day, January 18, 2023, and expired 125 days later on May 23, 2023. Cotton's Original Petition was transmitted to the Court on or about November 16, 2023, and his First-Amended Petition was filed on April 14, 2025, making them both untimely.

Cotton acknowledges that his Original Petition was untimely; however, he argues that he is entitled to equitable tolling. (ECF No. 49 at 5.) The Supreme Court has held that the AEDPA statute of limitations "is subject to equitable tolling in appropriate cases." *Holland v. Fla.*, 560 U.S. 631, 645 (2010). Equitable tolling is appropriate when (1) a petitioner has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing. *See id.* at 649. To satisfy the first element, a petitioner "must show that he has been reasonably diligent in pursuing his rights not only while an impediment to filing caused by an extraordinary circumstance existed, but before and after as well, up to the time of filing." *Smith v. Davis*, 953 F.3d 582, 598-99 (9th Cir. 2020) (en banc). To satisfy the second element, a petitioner must demonstrate that the "extraordinary circumstances" were the *cause* of his untimeliness. *Grant v. Swarthout*, 862 F.3d 914, 926 (9th Cir. 2017).

Cotton argues that he is entitled to equitable tolling because he suffers from a serious combination of multiple chronic autoimmune diseases, including mixed connective tissue disease with prominent myotosis and interstitial lung disease, which

---

[3]During this time, the 90-day deadline was extended to 150 days due to the Covid-19 pandemic.

were not diagnosed until early 2024 but began to impact his daily quality of life starting in late 2022. (ECF No. 49 at 5.) Cotton explains that "[h]e had low energy, was constantly struggling to breathe, and was bed-ridden for long stretches of time," significantly impairing his ability to work on his petition. (*Id*. at 8.)

In support of his contention that an extraordinary circumstance stood in his way and prevented timely filing, Cotton presents a report prepared by Ryan O'Connor, M.D., an Emergency Medical Physician. (ECF No. 50-6.) Dr. O'Connor reviewed Cotton's medical records and reported the following:

> Mixed Connective Tissue Disease is a rare autoimmune disorder that combines features of several other diseases including systemic lupus erythematosus, scleroderma, and polymyositis. This condition is characteristically chronic with onset of symptoms often gradually progressing over years before a diagnosis is made. The disease is an autoimmune disorder where the body's immune system starts to attack parts of the patient's own body resulting in symptoms. In Mr. Cotton's case, with prominent myositis and interstitial lung disease, his muscles (including the heart) and lungs are particularly affected. There is no cure for this disease and treatment aims at limiting the symptoms. The mainstay of treatment is immunosuppressive therapy which weakens the patient's immune system but makes them prone to complications such as developing infections.
>
> [Cotton's] medical records . . . demonstrate the progressively worsening course of Mr. Cotton's chronic medical condition. The patient manifested significant complaints of shortness of breath, fatigue, and weakness from at least January of 2023. These complaints increased in frequency and severity throughout the year and culminated in multiple lengthy hospitalizations by early 2024. The severity of his autoimmune disorder and resulting complications is starkly apparent in his life-threatening presentation to the ER on 03/11/2024 that resulted in a nine day stay in the Intensive Care Unit.
>
> It is my professional medical opinion that Mr. Cotton was manifesting significant symptoms of his latter diagnosed mixed connective tissue disease with prominent myositis and interstitial lung disease, including shortness of breath, weakness, and fatigue, that likely impacted his ability to perform functions of daily life and would have significantly impaired his ability to complete a petition in a timely manner.

(*Id*. at 5-6.)

In support of his contention that he acted with diligence, Cotton explains that he had asked the law library for assistance but was unable to get the help he needed, his mother contacted the Federal Public Defender on his behalf in February 2023 to get

6

assistance but was unable to get assistance without the court appointing counsel, he sent kites to the law library asking for information, and he asked another inmate for help and that inmate referred him to a jail house lawyer. (ECF No. 50-8.)

Given the medically documented severity of Cotton's physical impairment and Dr. O'Connor's finding of causation between Cotton's autoimmune disease and the untimely filing of his Original Petition, the Court finds that Cotton is entitled to equitable tolling. Specifically, the Court finds that Cotton has demonstrated that his physical condition rises to the level of an extraordinary circumstance, Cotton diligently pursued his rights as reasonably could be expected given his physical impairments, and Cotton's physical impairment was the cause of his untimely filing. *See Holland*, 560 U.S. at 649-50 (explaining that the "exercise of a court's equity powers must be made on a case-by-case basis" which "enables courts to meet new situations that demand equitable intervention, and to accord all the relief necessary to correct particular injustices"); *see also Cruz v. Ramirez-Palmer*, 50 Fed. Appx. 367 (9th Cir. 2022) (recognizing that a petitioner's physical incapacities, which render a petitioner "severely incapacitated," may warrant equitable tolling of the AEDPA one-year limitations period). Accordingly, the Court finds that Cotton's Original Petition was timely.

Respondent next argues that, even if the Court finds that Cotton's Original Petition was timely, grounds 3, 5, 6a, 6b, and 7 of the First-Amended Petition remain untimely because they do not relate back to any claim raised in the Original Petition. (ECF No. 35 at 6.) A new claim in an amended petition that is filed after the expiration of the AEDPA one-year limitation period will be timely only if the new claim relates back to a claim in a timely-filed pleading on the basis that the claim arises out of "the same conduct, transaction or occurrence" as a claim in the timely pleading. *See Mayle v. Felix*, 545 U.S. 644 (2005). In *Mayle*, the United States Supreme Court held that habeas claims in an amended petition do not arise out of "the same conduct, transaction or occurrence" as

claims in the Original Petition merely because the claims all challenge the same trial, conviction, or sentence. *See id*. at 655-64. Rather, habeas claims asserted in an amended petition relate back "only when the claims added by amendment arise from the same core facts as the timely filed claims, and not when the new claims depend upon events separate in 'both time and type' from the originally raised episodes." *Id*. at 657. In this regard, the reviewing court looks to "the existence of a common 'core of operative facts' uniting the original and newly asserted claims." *Id*. at 659. A claim that merely adds "a new legal theory tied to the same operative facts as those initially alleged" will relate back and be timely. *Id*. at 659 & n. 5; *see also Ha Van Nguyen v. Curry*, 736 F.3d 1287, 1297 (9th Cir. 2013).

In ground 3, Cotton alleges that his trial counsel failed to seek adverse inferences from the omission of exculpatory testing done for gunshot residue and DNA. (ECF No. 23 at 13.) Cotton argues that this ground relates back to ground 3 of his Original Petition. (ECF No. 49 at 23.) In ground 3 of his Original Petition, Cotton alleged that his trial counsel "fail[ed] to seek adverse inferences from the deliberate omission of exculpatory testing on the part of the prosecution." (ECF No. 4 at 12.) Cotton argued that the "[d]efense would have been entitled to two adverse inferences regarding evidence that was collected for testing, but was not tested at the request of the state," including "the lack of available gunshot testing" and DNA on the firearm. (*Id*. at 16.) Respondent argues that ground 3 of the First-Amended Petition includes the following facts that were not included in ground 3 of the Original Petition: "the jury's inquiries about the gunshot residue testing as well as trial counsel failing to object in lieu of requesting an adverse inference jury instruction." (ECF No. 55 at 4.) Respondent too narrowly construes and compares ground 3 of the First-Amended Petition with ground 3 of the Original Petition. Rather, construing these two claims more broadly, it is clear to the Court that they share a common core of operative facts. The Court finds that Ground 3 is timely.

In ground 5, Cotton alleges that his trial counsel failed to object when the trial court did not adhere to the sentencing stipulation. (ECF No. 23 at 22.) Cotton argues that this ground relates back to grounds 6 and 2 of his Original Petition. (ECF No. 49 at 23-24.) Neither ground 6 nor ground 2 of Cotton's Original Petition specifically discuss the sentencing stipulation. Because Cotton concedes that the stipulation is the operative fact of ground 5 (*see* ECF No. 49 at 23), the Court, even liberally construing the Original Petition, cannot find that ground 5 relates back. Ground 5 is dismissed as untimely.

In ground 6a, Cotton alleges that his trial counsel failed to present expert testimony to support his defense theory of a struggle or accidental shooting. (ECF No. 23 at 29.) Cotton argues that this ground relates back to grounds 3 and 7 of his Original Petition. (ECF No. 49 at 24-25.) Respondent argues that ground 6a includes the following fact not referenced within his Original Petition: "an expert declaration provided by Senior Forensic Scientist Chris Coleman." (ECF No. 55 at 4.) The inclusion of this declaration does not change the common core of operative facts. Rather, the declaration merely provides factual support for the operative facts. Accordingly, ground 6a relates back given that Cotton made the following argument within his Original Petition: "without consulting and presenting an expert, counsel was unable to either present specific evidence that his client was not the murderer or advance a plausible alternative defense theory." (ECF No. 4 at 44.) The Court finds that Ground 6a is timely.

In ground 6b, Cotton alleges that his trial counsel presented a false defense that the shooting was a suicide, which is a theory unsupported by the evidence. (ECF No. 23 at 35-36.) Cotton argues that although "this claim does not relate back to specific facts pled in the original petition," "it does connect to a penumbra of claims concerning the division of authority between attorney and client in choosing the objective of the defense." (ECF No. 49 at 25.) The Court finds that this connection is too attenuated for relation-back purposes. The division of authority between attorney and client is too general of an

9

idea to contain a common core of operative facts with the specific argument that an attorney presented an unsupportable theory that the victim committed suicide. Ground 6b is dismissed as untimely.

In ground 7, Cotton alleges that his trial counsel failed to present evidence that his PTSD and mental health issues affected his ability to form first-degree intent. (ECF No. 23 at 39.) In his opposition to the Motion, Cotton did not discuss Respondent's contention that ground 7 does not relate back.[4] (*See generally* ECF No. 49.) However, following the Court's independent review, the Court finds that ground 7 relates back to Cotton's Original Petition. In the Original Petition, Cotton argued that (1) his mental health issues, including his PTSD, should have been considered and (2) "there was no evidence of an intent to kill at any time." (ECF No. 4 at 8, 20.) The combination of these facts constitutes the operative facts of ground 7. The Court finds that Ground 7 is timely.

### B.   Exhaustion

Cotton argues that ground 3 is exhausted because he presented it to the state courts during his state habeas proceedings. (ECF No. 49 at 26.) As a reminder, in ground 3, Cotton alleges that his trial counsel failed to seek adverse inferences from the omission of exculpatory testing done for gunshot residue and DNA. (ECF No. 23 at 13.) Cotton raised this ground in his supplement to his state habeas petition: his trial counsel was ineffective due to a "[f]ailure to seek adverse inferences from deliberate omission of exculpatory testing." (ECF No. 38-13 at 17.) In his opening brief on appeal, Cotton argued that the state court summarily erred in denying his state habeas petition without conducting an evidentiary hearing because he "raised multiple claim<u>s</u> for relief . . . in the Petition." (ECF No. 38-35 at 7, 30.) Although Cotton alluded to this claim by pointing the appellate court to his state habeas petition, Respondent contends that Cotton never specifically raised it on appeal. (ECF No. 55 at 10.) While Cotton did not explicitly raise

---

[4]This appears to have been an oversight.

10

this claim within his opening brief, he did argue that his trial counsel was ineffective and that "despite the decedent's hands being preserved for evidence and having four swabs taken from the gun, no testing whatsoever was done to establish whether she had gunshot residue on her hands or whether her DNA was on the trigger of the gun." (*Id*. at 27-28.) Accordingly, Cotton presented the state appellate court with ground 3's legal basis—ineffective assistance of counsel—and factual basis—the lack of exculpatory testing. The Court finds that ground 3 was fairly presented and is exhausted.

Turning to grounds 6a and 7, Cotton concedes that they are unexhausted, but he contends that they should be considered technically exhausted and procedurally defaulted and that he can overcome their procedural defaults under *Martinez v. Ryan*. (ECF No. 49 at 27.)

A claim may be considered procedurally defaulted if "it is clear that the state court would hold the claim procedurally barred." *Sandgathe v. Maass*, 314 F.3d 371, 376 (9th Cir. 2002). Cotton would face several procedural bars if he were to return to state court. *See, e.g.*, NRS §§ 34.726, 34.810. Nevada has cause and prejudice and fundamental miscarriage of justice exceptions to its procedural bars, which are substantially the same as the federal standards. If a petitioner has a potentially viable cause-and-prejudice or actual-innocence argument under the substantially similar federal and state standards, then that petitioner cannot establish that "it is clear that the state court would hold the claim procedurally barred." *See Sandgathe*, 314 F.3d at 376. For that reason, the courts in this district have generally declined to find a claim subject to anticipatory procedural default unless the petitioner represents that he would be unable to establish cause and prejudice in a return to state court. In such a case, the claim would generally be subject to immediate dismissal as procedurally defaulted, as the petitioner would have conceded that he has no grounds for exception to the procedural default in federal court.

11

A different situation is presented, however, where the Nevada state courts do not recognize a potential basis to overcome the procedural default arising from the violation of a state procedural rule that is recognized under federal law. In *Martinez v. Ryan*, the Supreme Court held that the absence or inadequate assistance of counsel in an initial-review collateral proceeding may be relied upon to establish cause excusing the procedural default of a claim of ineffective assistance of trial counsel. *See* 566 U.S. 1, 9 (2012). The Nevada Supreme Court does not recognize *Martinez* as cause to overcome a state procedural bar under Nevada state law. *See Brown v. McDaniel*, 331 P.3d 867, 875 (Nev. 2014). Thus, a Nevada habeas petitioner who relies upon *Martinez*—and only *Martinez*—as a basis for overcoming a state procedural bar on an unexhausted claim can successfully argue that the state courts would hold the claim procedurally barred but that he, nonetheless, has a potentially viable cause-and-prejudice argument under federal law that would not be recognized by the state courts when applying the state procedural bars.

Here, Cotton advances only *Martinez* as a basis for excusing the anticipatory default of grounds 6a and 7. Accordingly, the Court considers grounds 6a and 7 to be technically exhausted and procedurally defaulted. Because the cause-and-prejudice analysis under *Martinez* is necessarily intertwined with the merits of those claims, the Court defers consideration of whether Cotton can overcome the procedural defaults of grounds 6 and 7 until the filing of an answer and reply in this matter.

## V.      CONCLUSION

It is therefore ordered that Respondent's Motion (ECF No. 35) is granted in part, as follows: (1) grounds 5 and 6b are dismissed as untimely; and (2) grounds 6a and 7 are considered technically exhausted but procedurally defaulted, and consideration of whether Cotton can demonstrate cause and prejudice under *Martinez* to overcome these procedural defaults is deferred until after the filing of an answer and reply in this matter.

It is further ordered that Respondent has until July 17, 2026 to file his answer to the remaining grounds in the First-Amended Petition. Cotton will then have 30 days to file his reply.

It is further kindly ordered that the Clerk of Court substitute John Henley for Respondent Tim Garrett.

DATED THIS 15th Day of May 2026.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE